UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Not for Publication

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHARLENE MORISSEAU,

     Plaintiff,

   -against-           06 Civ. 13255 (LAK)

DLA PIPER, et al.,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AMENDED MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

     Plaintiff, an African-American graduate of the Harvard Law School and, in her student days, an editor of the *Harvard Law Review*, here sues DLA Piper, a former employer, and a host of its personnel principally for employment discrimination. She alleges that (a) her work conditions and termination were discriminatory on the basis of her race, (b) her termination constituted retaliation for protected activity, (c) the firm engaged in post-termination retaliation in connection with her application for admission to the New York Bar, (d) she was subjected to a hostile work environment, and (e) the firm breached a contract by allegedly terminating her for complaining about what she asserted was an ethical violation. The matter is before the Court on defendants' motion for summary judgment.

### *Prior Proceedings*

     This controversy has had a long and turbulent history.

     Plaintiff initially filed a complaint with the Equal Employment Opportunity

Commission ("EEOC") which, on August 14, 2006, determined upon its investigation that it was unable to conclude that any violation of the civil rights laws had occurred and notified plaintiff of her right to sue. On November 16, 2006, plaintiff, then represented by the firm of Ballon Stoll Bader & Nadler, PC (the "Ballon Firm"), filed this action.

On February 16, 2007, the Court entered a Consent Scheduling Order (DI 17) which called for the completion of discovery by May 25, 2007 and the filing of a joint pretrial order by May 31, 2007.

Discovery did not proceed smoothly, to say the least. Some of the difficulties are captured by this excerpt from the Court's order of March 29, 2007:

> "Defendants served their document requests on January 12, 2007. On February 16, 2007, the Court ordered plaintiff to respond to all outstanding document requests by March 8, 2007. Plaintiff then sought an extension of, among other things, the time for document production. By order endorsed on the application and dated March 15, 2007, the Court directed that '[t]he documents shall be produced by plaintiff no later than March 20, 2007.'

> "On March 20, 2007, plaintiff produced 340 pages of documents and a formal response to the document request that was filled with boilerplate objections. She furnished also a privilege log, as required by S.D.N.Y. Civ. R. 26.2., which asserted privileged as to only 7 documents.

> "Upon review of the documents produced by plaintiff, defendants' counsel concluded that there were numerous categories of requested documents in which no responsive documents were furnished and in which it was most unlikely that plaintiff did not possession [*sic*] responsive materials. Accordingly, they wrote to plaintiff's counsel making these points. Plaintiff's counsel did not respond.

> "On March 26, 2007, plaintiff appeared for her deposition. At the outset, she admitted that she had numerous responsive documents that had not been produced including documents relating to her employment after leaving defendant DLA Piper, her litigation against a former employer, and her application to the New York Bar. She admitted also that she had two e-mail accounts that she had not reviewed for responsive documents.

> "When confronted with this testimony, plaintiff's counsel first sought to

excused [*sic*] the failure to produce these documents on the ground that a Confidentiality Stipulation only recently had been signed.  This excuse, however, was undercut by the fact that defendants sent the confidentiality stipulation to plaintiff's counsel on March 14 and followed up on March 21 after failing to hear from plaintiff's counsel.  In any case, the Confidentiality Stipulation was so-ordered on March 23, in advance of plaintiff's deposition.  Plaintiff's counsel then changed course.  Following a break at the deposition, he told defendants' counsel that the reason the documents had not been produced is that many were privileged.  They did not, however, appear on the privilege log served on March 20, 2007."  DI 28.

Accordingly, the Court held that all privilege claims with respect to documents that did not appear on the March 20, 2007 privilege log had been waived.  It granted defendants' motion for sanctions to the extent that plaintiff was ordered to "pay defendants $5,000 to compensate them for part of the attorneys' fees incurred by defendants in making this application and in conducting the March 26 session of plaintiff's deposition without the benefit of the documents that the Court had ordered produced by March 20, in advance of the deposition."  In addition, in light of the fact that  "the documents withheld include materials going directly to plaintiff's economic damages as a result of her departure from DLA Piper," it precluded plaintiff "from offering evidence of economic damages as a result of that departure unless <u>all</u> documents sought by defendants' request are produced on or before April 2, 2007."[1]  *Id.*  This dispute was only a harbinger of things to come.

Depositions were scheduled to resume on April 9, 2007.  On that morning, however, plaintiff purportedly fired the Ballon Firm.  Defendants by letter sought an order that the case proceed notwithstanding the purported termination of plaintiff's counsel.  Moreover, on April 10, 2007, defendants moved for a Rule 35 examination of plaintiff by mental health professionals.

On April 10, 2007, the Court held a conference in consequence of defendants' request.

---

[1] Plaintiff ultimately did not comply.  The economic damages aspect of her claim therefore was dismissed.  DI 102.

At that time, it stayed the action, with certain exceptions, to and including May 10, 2007 to permit plaintiff to seek other counsel. Tr., Apr. 10, 2007, at 12. It extended plaintiff's time to respond to the Rule 35 motion until May 24. *Id.* at 13. In addition, it permitted defendants to make any motion they saw fit with respect to events that already had occurred, with opposing papers on any such motion to be due on the later of May 24 or the fourteenth day after the date the motion was made. *See also* DI 37.

Two motions were filed while the case was stayed: (1) defendants' motion to compel and for sanctions (DI 40), and (2) the Ballon Firm's motion for leave to withdraw and to fix charging and retaining liens (DI 42).

The stay expired on May 10, 2007. No counsel appeared on plaintiff's behalf. In addition, defendants noticed the continuation of her deposition for May 22. Plaintiff, however, simply failed to show up. DI 84, ¶¶ 3-5 & Ex. 1; DI 102, at 4; DI 139, ¶ 4.

May 24, 2007 came and went without any response by plaintiff to the pending motions. Accordingly, on May 29, 2007, the Court granted all three motions. DI 47.

The strife, if anything, subsequently increased. Plaintiff subsequently has engaged in repeated baseless efforts to relitigate the question whether she should be compelled to submit to a Rule 35 examination and, if so, on what terms as well as the privilege objections that were waived long ago. *See, e.g.,* DI 102, at 4-5. It would burden this memorandum unduly to recapitulate the details. They are apparent from the docket sheet as well as a number of orders of the Court. *E.g.,* DI 95, 97, 98, 102, 106, 111.

In short, plaintiff repeatedly has obstructed the progress of this action and has ignored deadlines and other obligations.

*The Pending Motion*

Defendants' motion for summary judgment dismissing the complaint was filed on October 22, 2007. Answering papers initially were due on or about November 5, 2007.

Plaintiff filed no answering papers on that date. She did, however, file an affirmation in opposition to another motion by defendants.[2] The last paragraph of her affirmation asked that the motion for summary judgment be held in abeyance pending the disposition of the other motion. DI 117 ¶ 12(d). While the Court saw no reason to hold the summary judgment motion in abeyance, it *sua sponte* extended plaintiff's time in which to respond to the summary judgment motion to and including November 14, 2007. DI 120.

On November 11, 2007, plaintiff moved for an extension of time until November 27, 2007 to respond to the motion for summary judgment. DI 121. That motion was granted. DI 124. Nonetheless, plaintiff filed no answering papers by the due date.

On November 28, 2007, after the due date already had passed, plaintiff filed a request to submit her responsive papers by mail, stating that she could not bring them to the Courthouse during business hours. DI 125. On the following day, the Court granted permission but with the proviso that it did not thereby extend the time within which papers had to be filed, DI 127, which already had expired.

On December 3, 2007, the Court received in chambers a package from plaintiff delivered by Federal Express. The package contained three volumes of purported exhibits to plaintiff's declaration authenticating documents in opposition to defendant's motion for summary

---

[2] That motion seeks dismissal for violation of several Court orders. DI 115.

judgment.[3]   No such declaration was filed.   Nor has plaintiff filed a Rule 56.1 statement, a memorandum of law, or any properly authenticated, admissible evidence in opposition to the motion.

The consequences of plaintiff's failure to respond are clear.  Under S.D.N.Y. CIV. R. 56.1, all well supported averments in defendants' Rule 56.1 Statement are deemed admitted. Moreover, as the Notice to Pro Se Litigants attached to the motion make clear,[4] plaintiff:

> "may NOT oppose summary judgment simply by relying upon the allegations in [her] complaint.   Rather, [she] must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising material issues of fact for trial . . . .
>
> "If [she] do[es] not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the material facts asserted by the defendant, the court may accept defendant's factual assertions as true.  Judgment may then be entered in defendant's favor without a trial."

As plaintiff has not controverted defendants' Rule 56.1 Statement, all of the well supported averments it contains are deemed admitted.

---

[3]   The three volumes together are roughly 3 inches thick.  The contents are not authenticated. There are no exhibit tabs or other labels, and there is no table of contents.  Even if there were a basis for concluding that these materials are admissible, as there must be in order to be considered here, *e.g., Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997), "'[j]udges are not like pigs, hunting for truffles buried' in the record."  *Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys.,* 309 F.3d 433, 436 (7th Cir.2002), *cert. denied,* 539 U.S. 941 (2003) (*quoting United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) (per curiam)).  The Court therefore would decline to review them in any event.

[4]   As plaintiff is a member of the Bar, she is not entitled to the considerations normally afforded *pro se* litigants. *E.g.,Smith v. Plati,* 258 F.3d 1167 (10th Cir. 2001) (declining to construe pleading liberally because litigant was licensed attorney), *Olivares v. Martin,* 555 F.2d 1192, 1194 n. 1 (5th Cir.1977) ("Mr. Olivares proceeds pro se in his appeal. We cannot accord him the advantage of the liberal construction of his complaint normally given pro se litigants because he is a licensed attorney."); *Presnick v. Bysiewicz,* 297 F. Supp.2d 431 (D.Conn. 2003) ("While pro se complaints are held to less exacting standards than pleadings drafted by lawyers, plaintiff, a former attorney, is not entitled to the considerations accorded a typical pro se plaintiff."); *Bertucci v. Brown,* 663 F. Supp. 447, 449 (E.D.N.Y.1987) ("plaintiff was a former attorney and is therefore not entitled to the considerations accorded a typical pro se plaintiff").  She nevertheless received the notice that must be sent to *pro se* litigants.

*Discussion*

In view of the procedural posture of the case, it is unnecessary to say a great deal about the evidence and the law. But the Court has reviewed defendants' submissions – which include voluminous excerpts from plaintiff's deposition – with care. A few brief words are in order.

Plaintiff applied for a job at Piper in early spring 2003. She was offered a job in its New York litigation department by Heidi Levine, now one of the defendants. Plaintiff was actively recruited for the position after the offer was made by Peter Bynoe, an African American partner in the firm's Chicago office. Def. 56.1 St. ¶¶ 4-5.

Plaintiff had serious difficulties with several people in the New York office. It would serve little purpose to recount the details here; they are spelled out in defendants' Rule 56.1 Statement and the papers there cited. *Id.* ¶¶ 5-146.

All of this led to Ms. Levine expressing the view, in late March 2004, that plaintiff's conduct needed to be addressed. *Id.* ¶ 147. After a careful review, Piper partners Finnerty III, Finnerty, Jr., and Inskeep concluded that plaintiff's behavior was unacceptable and that she would have to acknowledge the problems and correct her behavior or be terminated. *Id.* ¶¶ 164-65. They delivered this message to her at a meeting on April 8, 2004, saying in substance that there were two options – Option A being to acknowledge the problems and correct her behavior and Option B being to discuss severance alternatives. *Id.* ¶ 172-75.

Finnerty III, another partner named Kaback, and plaintiff met again on April 13, 2004. Plaintiff claimed that she lacked sufficient information to choose either Option A or Option B and declined to pick one. *Id.* ¶¶ 179-80. Finnerty III informed plaintiff on the following day that her employment was terminated. *Id.* ¶¶ 183-86. Finnerty III has sworn that the termination was based

on plaintiff's insubordinate and inappropriate conduct and had nothing to do with race or retaliation. Finnerty III Decl. ¶¶ 41-42.

In order to withstand a motion for summary judgment, an employment discrimination plaintiff first must adduce evidence that would permit a reasonable trier of fact to find that (1) she was a member of a protected class, (2) her job performance was satisfactory, (3) an adverse employment action occurred, and (4) the action occurred in circumstances giving rise to an inference of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). If such evidence is adduced, the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for their actions. *See id.* at 142. Assuming that burden is carried, the evidence as a whole must be such as to justify a trier of fact's finding "that the defendant intentionally discriminated against the plaintiff." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993).

In this case, plaintiff concededly was a member of a protected class. Her termination was an adverse employment action. The critical questions are whether her job performance was sufficiently satisfactory to make out a *prima facie* case and, if it was, whether a trier of fact on this record reasonably could find discrimination on the basis of race. It quite plainly could not.

Historically there has been some tension in the Second Circuit authorities as to how demanding is the required showing of qualification for employment or continued employment at the *prima facie* case stage. On occasion, concern has been expressed lest the requirement of proof of a *prima facie* case fold into the ultimate determination on the merits. *See, e.g., Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001); *Tavoloni v. Mount Sinai Med. Ctr.,* 26 F. Supp.2d 678, 681 (S.D.N.Y. 1998) (citing cases); *Naftchi v. New York University,* 14 F. Supp.2d 473, 480-81 (S.D.N.Y. 1998) (same). But this uncertainty does not affect the analysis of this case.

Here, the uncontradicted evidence demonstrates that plaintiff did not perform in a manner satisfactory to Piper notwithstanding her academic credentials. She was a confrontational, stubborn, and insubordinate employee in an environment in which professional personal relations, flexibility and a willingness to accept supervision were essential. For that reason alone, she arguably cannot establish a *prima facie* case. But she would fail even if the Court were to assume the existence of a *prima facie* case. Defendants have articulated a legitimate, non-discriminatory reason for plaintiff's termination. There is no basis from which any reasonable jury could find that race played a factor in the decision to terminate plaintiff, as there is no evidence to support the notion that plaintiff's difficulties were race-related. Indeed, plaintiff had difficulties with more than one senior lawyer who was involved in hiring her not many months before. *Cf. Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir. 1997) (difficult to impute invidious motive inconsistent with decision to hire to person involved in hiring decision).

The Court has considered also plaintiff's hostile work environment and other claims. There is no evidence from which a reasonable trier of fact could find that plaintiff's workplace was "permeated with 'discriminatory intimidation, ridicule, and insult'" that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment," *Harris v. Forklift Sys.,* 510 U.S. 17, 21 (1993) (citation omitted), let alone that any problems in the workplace were race related.

The retaliation claims also fail. While plaintiff engaged in protected activity and suffered an adverse employment action when she was terminated, there is no evidence of any causal connection between the two. Nor is there any evidence either of any adverse post-termination action by defendants or, even if there were, of any causal connection between any such action and any

protected activity.

Finally, plaintiff's breach of contract claim fails. First, the Court already has dismissed her claim for economic damages (DI 50, 102), the sole relief available even if there were a breach of contract. In any case, the conduct alleged here does not come within the narrow exception articulated in *Wieder v. Skala,* 80 N.Y.2d 628 (1992), because the Piper firm never impeded or discouraged plaintiff from filing a complaint with the Disciplinary Committee.

*Conclusion*

The Court understands that plaintiff's belated submission of the three volumes of purported exhibits may evidence a desire to oppose this motion and that she is proceeding *pro se*. However, it has elected not to delay decision further against the possibility that further papers will arrive. Plaintiff is a member of the Bar, a graduate of the Harvard Law School, and a former editor of its law review. She is fully able to conduct this litigation properly. She repeatedly has failed to do so. Indeed, she has defied court orders, ignored schedules, failed to show up for or obstructed her deposition, and filed frivolous applications. She has no claim to any further indulgence.

Defendants' motion for summary judgment dismissing the complaint (DI 114) is granted in all respects.

SO ORDERED.

Dated:        December 13, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)